R. H. Oswald Company, Inc. v. Commissioner.
R. H. Oswald Co., Inc. v. Commissioner
Docket No. 19641.
United States Tax Court
1949 Tax Ct. Memo LEXIS 44; 8 T.C.M. (CCH) 964; T.C.M. (RIA) 49262; October 25, 1949
*44 Walter E. Barton, Esq., 811 Investment Bldg., Washington, D.C., for the petitioner. Lester A. Ponder, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: Respondent determined deficiencies against petitioner for the fiscal years ended June 30, 1943 and June 30, 1944, as follows: 1943
1944
Income tax
$ 144.08
Declared value excess
profits tax
5,570.88
$ 3,100.64
Excess profits tax
33,530.83
47,356.27
Petitioner contests the disallowance of salaries paid petitioner's president, R. H. Oswald, for the taxable years for his services. Other adjustments made by respondent are uncontested. The facts are found as stipulated and are here summarized. Other facts are found from the evidence and exhibits submitted. Findings of Fact The petitioner is a corporation organized under the laws of the State of Indiana, with principal office at Evansville, Indiana. The corporate income and declared value excess profits and excess profits tax returns of the petitioner for the fiscal years ended June 30, 1943, and June 30, 1944, were filed with the collector of internal revenue at Indianapolis, Indiana. Petitioner *45 kept its books and made its returns for the fiscal years on the accrual basis. Petitioner was organized on July 17, 1922 as The Oswald-Sparrenberger Company. On June 30, 1943 the name of petitioner was changed to R. H. Oswald Company, Incorporated. The capital stock of petitioner since the date of organization has been $30,000, consisting of 300 shares of the par value of $100 per share. From July 31, 1929 until Nov. 13, 1937 one-half of the stock was owned by R. H. Oswald and one-half by Henry W. Sparrenberger. Since November 13, 1937, the capital stock of the petitioner has been held as follows: R. H. Oswald
290 shares
Matilda Oswald (wife of R. H.
Oswald)
5 shares
Charles E. Oswald (brother of R. H.
Oswald)
5 shares
The following table shows petitioner's net sales and net income and the amounts paid by petitioner to Oswald for the fiscal years from 1939 to 1946, inclusive, and deducted on its income tax returns as officers' compensation for those years: Paid to
Year
Net Sales
Net Income
Oswald
1939
$ 745,010.57
$ (733.01)
$ 7,200.00
1940
809,626.90
5,394.74
7,200.00
1941
864,234.37
5,837.06
7,200.00
1942
1,150,225.23
17,256.36
7,200.00
1943
1,884,758.83
24,000.00
45,767.83
1944
2,350,855.23
24,000.00
48,503.12
1945
2,602.082.88
24,000.00
48,519.64
1946
2,434,831.67
24,000.00
21,706.43
*46 Petitioner has paid no cash dividends on its stock since the fiscal year ended June 30, 1932. Henry Sparrenberger was one of the organizers of petitioner and was secretary-treasurer thereof. In 1937 he sold his stockholdings to R. H. Oswald, Matilda Oswald, and Charles E. Oswald and was not connected with petitioner thereafter. The minutes of petitioner's board of directors' meeting of January 8, 1930, state: "In view of the fact that the increase or decrease of profits of this company are due entirely to the efforts and management of the active officers, it is hereby authorized by the Board of Directors that for the year 1929-30 and the following years, the following plan shall form a basis for their compensation. "'That each active officer shall have credited to his personal drawing account $7,200.00 per year as regular salary, and in addition, when the earnings of the company exceed 20% on outstanding capital stock, the officers shall receive 50% of such excess, to be distributed equally as additional compensation.'" The minutes of the meeting of the board of directors of August 6, 1941 state: "RESOLVED, that by unanimous consent of the Board of Directors the salary *47 of R. H. Oswald was to be $7,200.00 (Seven-thousand two hundred dollars) per year and as additional compensation; when the net worth of the Company exceeded $75,000.00 (Seventy-five thousand dollars) then all additional gross earnings above 80% (eighty per cent) on the par value of the outstanding capital stock, would be used as additional salary compensation for R. H. Oswald." The minutes of the meeting of the board of directors of July 31, 1942, state: "RESOLVED, that the salary of R. H. Oswald, President of the Oswald-Sparrenberger Company, Evansville, Indiana, be $800.00 (Eight hundred dollars) per month effective as of July 1, 1942, and as additional compensation; when the net worth of the Company exceeded $75,000.00 (Seventy-five thousand dollars) then all additional gross earnings above 80% (Eighty per cent) on the par value of the outstanding capital stock, would be used as additional Salary Compensation for R. H. Oswald, and remain until changed by the Board of Directors." The minutes of the meeting of the board of directors of August 4, 1943, state: "RESOLVED, that the salary of R. H. Oswald, President of the R. H. Oswald Company, Inc., of Evansville, Indiana, be *48 $800.00 (Eight hundred dollars) per month; and as additional compensation, while the net worth of the company exceeds $75,000.00 (Seventy-five thousand dollars) then all additional gross earnings above 80% (Eighty per cent) on the par value of the outstanding capital stock, would be used as additional Salary Compensation for R. H. Oswald, and remain until changed by the Board of Directors." A similar resolution was passed on August 2, 1944. Petitioner's financial statement for the fiscal years ended June 30, in 1942, 1943, and 1944, shows: Fiscal Years Ended
June 30,
June 30,
June 30,
ASSETS
1942
1943
1944
Income
Cash on hand and in bank
$ 12,628.41
$ 36,813.79
$ 7,726.98
Accounts and notes receivable - Less reserves
46,593.81
69,350.07
74,848.71
Merchandise inventory
62,008.65
42,564.66
76,559.44
U.S. government bonds
15,000.00
Total current assets
$121,230.87
$148,728.52
$174,135.13
Fixed Assets
Real estate and buildings
$ 4,950.00
$ 17,135.84
$ 19,336.39
Auto equipment
15,353.98
13,194.99
8,592.38
Furniture and fixtures
1,362.71
1,220.21
994.21
Machinery and equipment
1,134.87
1,134.87
1,134.87
Total
$ 22,801.56
$ 32,685.91
$ 30,057.85
Less depreciation reserves
11,920.23
10,618.89
8,271.12
Net book value
$ 10,881.33
$ 22,067.02
$ 21,786.73
Deferred Charges
Unexpired insurance
$ 615.66
$ 887.90
$ 2,140.48
Prepaid interest
159.03
Prepaid payroll
1,166.55
Total
$ 774.69
$ 2,054.45
$ 2,140.48
Total assets
$132,886.89
$172,849.99
$198,062.34
LIABILITIES
Current Liabilities
Accounts payable - Trade
$ 10,812.63
$ 16,356.86
$ 14,577.23
Notes payable
31,725.00
3,026.29
13,000.00
Accrued taxes and expense
4,159.76
4,995.74
3,220.36
Personal accounts payable
4,602.76
34,656.18
35,502.86
Reserve for Federal income taxes
5,528.45
9,730.54
6,460.00
Reserve for Federal OAB and WH taxes
10,196.08
13,801.98
Accts. receivable - Cr. balances
197.17
Total current liabilities
$ 56,828.60
$ 78,961.69
$ 86,759.60
Other Liabilities
Real estate mortgage
$ 2,295.08
Reserve for wage liability
$ 1,365.97
$ 1,365.97
Total
$ 2,295.08
$ 1,365.97
$ 1,365.97
Capital Accounts
Common stock outstanding
$ 30,000.00
$ 30,000.00
$ 30,000.00
Earned surplus
43,763.21
62,522.33
79,936.77
Total
$ 73,763.21
$ 92,522.33
$109,936.77
Total liabilities
$132,886.89
$172,849.99
$198,062.34
*49 Petitioner's statement of operations for the taxable years shows: Fiscal Years Ended
Particulars
June 30, 1943
June 30, 1944
Income
Net Sales Revenue
$1,884,758.82
$2,350,855.23
Deduct Cost of Sales
1,568,927.71
2,015,264.89
% to Net Sales
83.24%
85.72%
Gross Operating Profit
$ 315,831.11
$ 335,590.34
% to Net Sales
16.76%
14.28%
Deduct Expenses
Merchandise and Delivery Expense
$ 108,565.78
$ 124,583.67
Sales Department Expense
76,432.75
88,939.25
General and Administration Expense
97,020.40
98,398.27
Total Operating Expense
$ 282,018.93
$ 311,921.19
% to Net Sales
14.96%
13.27%
Operating Profit
$ 33,812.18
$ 23,669.15
% to Net Sales
1.80%
1.01%
Additions to Income
Purchase Discount
$ 2,438.56
$ 6,133.07
Old Accounts Collected
167.59
164.29
Rents Received
480.00
283.00
Profit on Sales of Assets
.15
Total
$ 3,086.15
$ 6,580.51
% to Net Sales
.16%
.28%
Total
$ 36,898.33
$ 30,249.66
% to Net Sales
1.96%
1.29%
Deductions from Income
Interest Paid
$ 1,280.31
$ 871.37
Bad Account Loss Provision
8,885.57
4,920.29
Depreciation Rental Property
197.00
Casualty Damage
2,535.45
Contributions
458.00
Total
$ 12,898.33
$ 6,249.66
% to Net Sales
.68%
.27%
Net Profit for the Periods
$ 24,000.00
$ 24,000.00
*50 Oswald was employed in the wholesale grocery and fresh fruit and vegetable business in Evansville since 1911. In 1922 he joined with others in forming petitioner and has since been its president and general manager. Prior to 1938, Oswald's duties for the petitioner consisted of buying and assembling fruits and vegetables, determining prices to be charged, instructing salesmen as to quantities of goods expected and prices thereof, and generally keeping the supplies flowing to petitioner so that retail customers could be supplied. After Sparrenberger's departure in 1937 his duties, which included being credit manager and office supervisor, were assumed by Oswald. Oswald had no previous experience either as credit or office manager. Oswald personally secured the merchandise from the producers or sellers and determined the quantities that he thought could be sold, based on the local market conditions. He employed the majority of the petitioner's personnel and the warehouseman in charge employed the remainder. Petitioner handles some merchandise on consignment in car lots. Oswald worked long hours during the years from 1941 to 1944, inclusive. He has always been a hard worker *51 and has never taken a vacation. He often worked 15 or 16 hours a day during the war years. Petitioner remained open 24 hours a day for phone orders; its doors were closed only about three hours a day. Oswald made spot checks of merchandise received to determine if it was of the quality ordered. Petitioner's trade area consists of the City of Evansville, Indiana, and the surrounding territory within a radius of approximately 100 miles. Petitioner had in the taxable year about 18 salesmen, 12 office employees, 55 warehousemen and truck drivers, and operated about 20 trucks. Fresh fruits and vegetables were not rationed during the war years. A consumer was limited in his purchases thereof only by the available supply and his own monetary resources. Petitioner's retail outlets were generally stores and concerns with which petitioner had done business for a number of years and many of which Oswald knew fairly well. Some 90 per cent of petitioner's customers were grocers, the remainder were hotels, restaurants and institutions such as hospitals. The bulk of the business was in fresh fruits and vegetables. Some 20 per cent to 25 per cent was in grocery items such as canned goods. *52 Petitioner paid $172,802.06 in the fiscal year 1943 and $195,975.67 in the fiscal year 1944 as salaries and wages of employees other than officers' compensation. Petitioner had earned surplus, according to its books and records, in the amounts of $43,763.21, $62,522.33 and $79,936.77 as of June 30, 1942, 1943, and 1944, respectively. During the fiscal years 1943 and 1944 petitioner was listed in the Produce Reporter "Blue Book", the function of which is to inform the industry of the financial and moral reputation of various concerns in the fruit and vegetable industry. Petitioner has been rated "XXXX", the highest rating used, in that publication since 1931. The respective amounts of $45,767.83 and $48,503.12 were paid by petitioner to Oswald during the fiscal years 1943 and 1944, or within two and one-half months thereafter, and claimed as deductions by petitioner on its Federal income and excess profits tax returns for those years as compensation for personal services rendered by Oswald. A reasonable allowance for compensation for the personal services of Oswald to petitioner is for the taxable year ended June 30, 1943, $22,500, and for the taxable year ended June 30, 1944, $25,000. *53 These amounts were ordinary and necessary expenses paid or incurred by petitioner in the respective years in carrying on its business. Opinion Petitioner's capital stock is 300 shares of which 290 are owned by R. H. Oswald, its president and general manager, and the remainder by his wife and brother, who serve as directors but are not employed by the corporation. It is thus a one man corporation. For the fiscal years 1943 and 1944 petitioner paid Oswald $45,787.83 and $48,503.12, respectively, and deducted these amounts on its tax returns as compensation for his services. Respondent allowed the fixed compensation of $800 per month provided by the recorded resolution of petitioner's board of directors and disallowed the contingent additional amount paid pursuant to that resolution as being excessive. Petitioner contends that the additional compensation based upon profits should be allowed as a deduction. Petitioner argues that Oswald had had 30 years' experience in the wholesale fresh fruit and vegetable business, 20 years as petitioner's president and general manager, that for five years he had performed all the executive and managerial duties and did so in the taxable years, *54 that he did the buying, fixed sales prices, supervised the salesmen and oversaw almost every detail of the business and usually devoted 15 or 16 hours a day to the business, that the business is unusually hazardous because of the perishable nature of the commodities, and that the burden of responsibility was heavier during the war years because of rapid labor turnover, inexperienced help and black market conditions. Petitioner also argues that the ratio of Oswald's compensation to petitioner's net sales was unusually low, being only 2.44 and 2.06 per cent thereof for the fiscal years 1943 and 1944, respectively. Under the compensation arrangement Oswald received the fixed salary of $9,600, the petitioner then retained the next $24,000 of earnings amounting to 80 per cent on the capital stock, and Oswald received all further earnings. Petitioner argues strongly that the resolution of January 8, 1930, was a contract under which petitioner was obligated to pay compensation to Oswald and Sparrenberger based upon results, that this was an incentive arrangement and evidenced a policy of providing incentive contingent compensation which continued to the taxable years. At that time and until *55 November 13, 1937, Oswald and Sparrenberger were the sole stockholders. They controlled the corporation and the profits inured to their benefit in whatever form they might choose. They were in effect both employer and employees and in this situation the compensation plan approved by the directors is not controlling in determining the reasonableness of the compensation paid pursuant thereto. No employees other than these officers participated in the profits as incentive compensation. After November 13, 1937, Oswald owned 290 shares out of the 300 and his wife and brother each owned 5 shares. He then controlled the corporation, and was for all practical purposes the sole distributee of the earnings whether labeled dividends or compensation. The subsequent resolutions, as shown in our findings, providing for a salary which included a share of the profits did not represent a free bargain between the corporation and Oswald to secure his services on terms advantageous to the corporation. The arrangement siphoned off earnings that would otherwise be available as dividends or capital surplus. It can be given but little, if any, weight in determining what is reasonable compensation. Petitioner's *56 evidence, however, establishes that Oswald's services in the taxable years, warranted compensation in excess of the amounts allowed by the respondent. His industry, long hours, and heavy responsibilities, the volume of petitioner's business and the net earnings attest to this. Upon consideration of all the relevant evidence we have determined that a reasonable allowance for compensation for Oswald's services to petitioner in the taxable years was $22,500 for the year ended June 30, 1943 and $25,000 for the year ended June 30, 1944. Decision will be entered under Rule 50.